**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Antonie Lee Sims,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-20-01498-PHX-DWL<br><br>**ORDER** |

At issue is the denial of Plaintiff Antonie Lee Sims's applications for disability insurance and supplemental security income benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 27, "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 28, "Def. Br."), and Plaintiff's Reply (Doc. 31, "Reply"). The Court has reviewed the briefs and Administrative Record (Docs. 19-1 to 19-20, "R.") and remands Plaintiff's case for further proceedings.

I.   **Background**

Plaintiff filed his applications for benefits on April 11, 2018, and May 3, 2018, with both applications alleging disability beginning on December 1, 2011. (R. 21.) Plaintiff later amended his onset date to February 28, 2014. (*Id.*) Plaintiff's claim was denied initially on October 19, 2018, and upon reconsideration on April 12, 2019. (*Id.*) On January 24, 2020, Plaintiff appeared before the ALJ for a hearing on his claim, and on

March 19, 2020, the ALJ denied Plaintiff's claim. (*Id.* at 18, 21.) The Appeals Council denied Plaintiff's request for review. (*Id.* at 1.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: traumatic brain injury ("TBI"), posttraumatic stress disorder ("PTSD"), and a mood disorder. (*Id.* at 24.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from May 13, 2014 through the date of the decision. (*Id.* at 36.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.* at 24.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"), finding Plaintiff had the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: No more than simple routine repetitive tasks, not performed in a fast paced production environment, and which require no more than occasional interaction with supervisors, co-workers, and the public.

(*Id.* at 29.)

Accordingly, although the ALJ found that Plaintiff "is unable to perform any past relevant work," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 35.) Considering testimony from the vocational expert, the ALJ found that Plaintiff was capable of performing work as a "janitorial worker," "housekeeper," or "store laborer." (*Id.* at 36.)

II.     **Legal Standard**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination

only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

. . .

. . .

. . .

III. **Analysis**

Plaintiff's opening brief raises three arguments. First, Plaintiff argues the ALJ erred when evaluating the opinions of Dr. McGady and Dr. Geary. (Pl. Br. at 16-25.)[1] Second, Plaintiff argues the ALJ erred when rejecting his symptom testimony. (*Id.* at 26-30.) Third, Plaintiff argues the ALJ erred by rejecting, or ignoring, disability findings and supporting evidence from the Department of Veterans Affairs. (*Id.* at 30-32.)

A. Medical Sources

1. **2017 Regulations**

In early 2017, the SSA amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The amended regulations apply to claims filed on or after March 27, 2017. *Id.* The parties agree that Plaintiff filed his application after the effective date. (Pl. Br. at 2; Def. Br. at 8.) They disagree, however, about how the new regulations change the Court's analysis.

Under the old regulations, "[t]he law in the Ninth Circuit [was] that, although the ALJ must consider all medical opinion evidence, there is a hierarchy among the sources of medical opinions. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians." *Latahotchee v. Comm'r of Soc. Sec. Admin.*, 2021 WL 267909, *4 (D. Ariz. 2021) (citation omitted). Based on this hierarchy, the Ninth Circuit consistently ruled that an ALJ may only reject an examining physician's opinion by providing "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion. . . . The most

---

[1] Although the body of Plaintiff's opening brief briefly mentions the ALJ's failure to "rate the persuasiveness of Dr. Lyster's assessment" (Pl. Br. at 20-21), Plaintiff's "Statement Of The Issues" only challenges the ALJ's evaluation of the opinions of Drs. McGady and Geary (*id.* at 1). Additionally, in his Reply, Plaintiff concedes that "Dr. Lyster's opinion is too remote to be of value in this case." (Reply at 2 n.3.)

important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a).  Other factors, which an ALJ "may, but [is] not required to[] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2), (c).

Plaintiff acknowledges that the 2017 regulations "rescind the regulatory 'treating physician rule[]' that previously gave deference to opinions from claimant's treating physicians." (Pl. Br. at 17.)  Plaintiff contends, however, that "the agency's current regulations do not abrogate the Ninth Circuit rule that an ALJ may only reject the opinion of an examining physician based on specific and legitimate reasons based on substantial evidence in a claimant's record." (*Id.* at 17-18.)

To the extent Plaintiff argues that the Ninth Circuit's physician hierarchy remains good law, the Court disagrees for the reasons stated in its earlier decisions in *Pennock v. Comm'r of Soc. Sec. Admin.*, 2020 WL 6796768, *3 (D. Ariz. 2020) (citing *Schisler v. Sullivan*, 3 F.3d 563 (2d Cir. 1993)), and *Toback v. Comm'r of Soc. Sec. Admin.*, 2022 WL 60548, *2 (D. Ariz. 2022) ("The new regulations eliminate the previous hierarchy of medical opinions.").  Although the Ninth Circuit has not yet weighed in on this issue, many other district courts have reached the same conclusion. *See, e.g.*, *Stipkovich v. Comm'r of Soc. Sec. Admin.*, 2021 WL 467189, *10 (N.D. Ohio 2021) ("[T]o the extent Stipkovich argues . . . that the 'treating physician rule' still survives despite the new regulation eliminating that rule, such an argument fails. . . . [T]hat argument has been rejected by other courts, and the undersigned finds their reasoning persuasive.") (citing *Pennock* and *Schisler*); *Jones v. Saul*, 2021 WL 620475, *6-9 (E.D. Cal. 2021) (holding that the new regulations are "valid and entitled to deference," "not contrary to the statute," and "displace[] contrary pre-existing caselaw") (capitalization omitted).

Plaintiff also suggests the Ninth Circuit's "specific and legitimate reasons" standard,

- 5 -

when detached from the hierarchy of medical opinions, is still viable as a means "to fulfill the requirement that physicians' opinions be evaluated based on consistency and supportability with the record." (Pl. Br. at 18.) The Court agrees with the crux of Plaintiff's argument, even though it is not clear that the "specific and legitimate" standard will remain. Whatever verbiage the Ninth Circuit ultimately adopts, under the amended regulations, the ALJ's findings must still "continue to satisfy metrics of both articulation [*i.e.*, specificity] and validity [*i.e.*, legitimacy] to survive review." *Shelley D. v. Kijakazi*, 2021 WL 4443322, *7 (D. Idaho 2021). *See also Kathleen G. v. Comm'r of Soc. Sec. Admin.*, 2020 WL 6581012, *3 (W.D. Wash. 2020) ("The new regulations also do not clearly supersede the 'specific and legitimate' standard. That standard is not an articulation of how ALJs must weigh or evaluate opinions, but rather a standard by which the court evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence. Whatever factors the Commissioner considers in evaluating a medical opinion, he must explain his reasoning to allow for meaningful judicial review, and the Ninth Circuit's 'specific and legitimate' standard is merely a benchmark against which the Court evaluates that reasoning.").

In sum, regardless of the precise standard, under the 2017 regulations an ALJ must "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). That explanation must still be supported by substantial evidence. 42 U.S.C. § 405(g) ("[F]indings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

2. **The ALJ Erred When Evaluating The Opinion Of Dr. McGady**

Dr. McGady performed a psychological evaluation of Plaintiff in September 2018. (R. 2304-12.) Dr. McGady reported that Plaintiff refused to take a "mini-mental status examination" but still observed that Plaintiff appeared agitated, anxious, irritated, and in distress during the evaluation. (*Id.* at 2307.) Dr. McGady opined that Plaintiff "is not likely to be able to meet the activities of daily living skills independently and is highly

likely to be unable to maintain employment independently without [a full-time caretaker]." (*Id.* at 2309.) In the Psychological/Psychiatric Medical Source Statement, Dr. McGady rated Plaintiff as likely to experience moderate difficulties when maintaining attention and concentration and likely to experience moderate to severe difficulties when receiving supervision, instruction, or criticism, engaging in socially appropriate behavior with coworkers, or responding to changes in the work environment. (*Id.* at 2311-12.)

The ALJ found Dr. McGady's opinion to be "somewhat persuasive in that it supports the RFC for the claimant being able to perform simple work. However, the undersigned did not agree with his finding that the claimant would have severe difficulties in social interaction, accepting supervision, or in adjusting to changes in the work environment. While the claimant did not cooperate in testing and seemed upset during the examination, the claimant's reactions during testing are not explained adequately in the report. As a result, the report is not as persuasive as the report done by Dr. Tai." (R. 34.)

Plaintiff argues that the ALJ's conclusion that "the claimant's reactions during testing are not explained adequately in the report" is "belied by the record." (Pl. Br. at 21.) Plaintiff notes that Dr. McGady observed that Plaintiff behaved erratically, refused to take a mini-exam, and did not appear to be exaggerating symptoms. (*Id.*) Plaintiff also argues that Dr. McGady's proposed limitations were supported by a review of Plaintiff's history and consistent with proposed limitations from other medical sources. (*Id.*)

The Commissioner responds by arguing that it was proper for the ALJ to consider Plaintiff's failure to give consistent effort during testing. (Def. Br. at 17-18.)[2]

Plaintiff replies that "the Commissioner presents nothing but repetition of the ALJ decision, supplemented by post hoc rationale." (Reply at 11.)

The Court agrees with Plaintiff that the ALJ erred. Although it may be proper for an ALJ to consider a claimant's failure to give consistent effort during testing, the Court does not find that the ALJ actually relied on that reasoning here. To reiterate, the ALJ stated that "[w]hile the claimant did not cooperate in testing and seemed upset during the

---

[2] Throughout this order, the Court will refrain from summarizing the Commissioner's briefing when it simply paraphrases the ALJ's order.

- 7 -

examination, the claimant's reactions during testing are not explained adequately in the report." (R. 34.) The Commissioner argues that this constitutes a finding by the ALJ that "Dr. McGady's findings were not reliable as they were based on an incomplete examination." (Def. Br. at 17.) The Court disagrees. The ALJ identified Plaintiff's uncooperativeness *and* that he was "upset" in the same clause with no distinction between the two, and the clause is introduced with the subordinating conjunction "[w]hile" rather than, for instance, the explanatory conjunction "because."

All of this leads the Court to conclude that the "while" clause reflects the ALJ's opinion that, despite Plaintiff's poor mood and stubbornness, Dr. McGady did his best to interact with Plaintiff during the exam. The Commissioner's arguments for affirmance thus represent impermissible *post hoc* reasoning—the ALJ did not discount Dr. McGady's opinions due to Plaintiff's failure to give consistent effort during testing. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

With this understanding in mind, the Court cannot meaningfully review the rest of the ALJ's analysis, which boils down to the naked assertion that she "did not agree" with Dr. McGady's proposed limitations because Plaintiff's "reactions during testing are not explained adequately." (R. 34.) The Court cannot affirm reasoning the ALJ does not divulge. *Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014) ("[A] ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); *Kathleen G.*, 2020 WL 6581012 at *3 ("Whatever factors the Commissioner considers in evaluating a medical opinion, he must explain his reasoning to allow for meaningful judicial review.").

This rule applies with particular force when, as here, the ALJ implies that she simply would have prescribed a different set of limitations if she were in Dr. McGady's position. (R. 34 ["[T]he undersigned did not agree with [Dr. McGady's] finding . . . ."].) "[I]t is beyond the scope of the ALJ's authority to insert his or her interpretation of testing results in place of an examining physician." *Tate v. Acting Comm'r of Soc. Sec. Admin.*, 413 F. Supp. 3d 1003, 1009 (D. Ariz. 2019).

### 3. The ALJ Erred When Evaluating The Opinion Of Dr. Geary

Dr. Geary performed a psychological examination of Plaintiff in December 2019, which included psychological tests, behavioral observations, and a clinical interview. Dr. Geary observed that Plaintiff "maintained a vigilant and antsy demeanor," "was visibly nervous . . . squirming and in almost constant motion," and was "oriented to noises outside of the examination room constantly." (R. 2572-73.) Dr. Geary diagnosed PTSD, chronic and moderate-to-severe major depressive disorder, and mild neurocognitive disorder due to TBI. (*Id.* at 2578.) Dr. Geary ultimately opined that Plaintiff had mild limitations on his ability to respond appropriately to supervision; moderate limitations on his ability to understand, carry out, and remember instruction, respond appropriately to coworkers, and perform simple tasks; moderately severe limitations on his ability to maintain sustainability of work pace; and severe limitations on his ability to respond to customary work pressures. (*Id.* at 2580-81.)

The ALJ found Dr. Geary's opinion to be "not persuasive." (*Id.* at 34.) The ALJ stated that "Dr. Geary's findings are discussed at length above in this decision and are inconsistent with the evidence in the file and thus are not persuasive." (*Id.*)

The Court has reviewed the full record and notes that, although the ALJ extensively summarized Dr. Geary's findings throughout the underlying decision, she only "discussed" them once: when disputing Dr. Geary's opinion that Plaintiff had a conclusive disability for purposes of step three. In that portion of the decision, the ALJ stated that "Dr. Geary opined that his testing showed the claimant met the criteria of sections 12.02, 12.04, and 12.15 of the listings of impairments. (Exhibit 21F, p. 8) This opinion is based on the

1 claimant's allegations, not on empirical evidence within the documents reviewed by Dr.
2 Geary.  The doctor does not cite to any document in the record he reviewed that shows the
3 criteria of the listings are met.  He cites studies of people with PTSD and TBI, but never
4 provides information on how the claimant, other than through the claimant's allegations,
5 demonstrates the criteria are met.  The studies cited are of other individuals, not the
6 claimant.  As such, the doctor's opinion is not persuasive.  His opinion is also not in keeping
7 with the opinions given by the three prior consultative examiners, all of whom found the
8 claimant able to perform simple work.  (Exhibits 6F, 13F, and 16F)  Dr. Geary who saw
9 the claimant only on this one visit, opined the claimant's condition had been as he described
10 since December of 2018."  (*Id.* at 27-28.)

11       Plaintiff argues that much of the ALJ's analysis of Dr. Geary is "regarding step-
12 three listed criteria for conclusive disability" and that "[t]here was nothing in the ALJ's
13 prior discussion that would give cause to doubt the assessment of [Plaintiff's] work
14 capacities.  The ALJ did not cite to any evidence in the record that the ALJ thought was at
15 odds with Dr. Geary's conclusions.  The ALJ did not mention Dr. Geary's ratings of
16 [Plaintiff's] functional limitations. . . ."  (Pl. Br. at 22.)  Plaintiff also argues that Dr.
17 Geary's assessment was in fact consistent with record evidence showing Plaintiff
18 struggling with symptoms of PTSD and depression, as observed by both treating and
19 consultative examiners.  (*Id.* at 23-24.)

20       The Commissioner responds that the ALJ properly found Dr. Geary's opinion not
21 persuasive because his restrictive findings were inconsistent with the overall record and
22 were not adequately supported.  (Def. Br. at 18-19.)

23       Plaintiff replies that the ALJ offered no rationale to establish that Dr. Geary's
24 assessment was not persuasive.  (Reply at 12.)

25       The Court agrees with Plaintiff that the ALJ erred.  As noted, under the 2017
26 regulations, an ALJ must explain how he or she "considered the supportability and
27 consistency factors for a medical source's medical opinions."  20 C.F.R. § 404.1520c(b)(2).
28 The ALJ's statement that Dr. Geary's report "is also not in keeping with the opinions given

by the three prior consultative examiners" plausibly satisfies the "consistency" factor explanation. However, contrary to the Commissioner's argument, the ALJ did not find "Dr. Geary's opinion not persuasive because . . . Dr. Geary's conclusions were not adequately supported." (Def. Br. at 19.) To the extent the ALJ made any statements that could be construed as touching upon supportability, those statements only referred to whether Dr. Geary's opinions regarding the applicability of "sections 12.02, 12.04, and 12.15 of the listings of impairments" were supported by medical evidence in the record. There was no independent analysis of whether Dr. Geary's opinions regarding Plaintiff's functional abilities were supported by medical evidence in the record. This omission requires reversal—the Court can only guess, on this record, whether the ALJ considered the supportability factor when evaluating Dr. Geary's opinions concerning Plaintiff's functional limitations.

    B. <u>The ALJ Did Not Err When Rejecting Plaintiff's Symptom Testimony</u>

Plaintiff testified to a variety of physical (*e.g.*, seizures and vertigo) and mental (*e.g.*, PTSD and depression) symptoms that are thoroughly summarized throughout the ALJ's decision. (R. 29-34.) The ALJ rejected Plaintiff's symptom testimony for two reasons: first, because the alleged symptoms were inconsistent with medical evidence (*id.* at 30); and second, because Plaintiff made a variety of inconsistent statements (*id.* at 34).

Plaintiff argues, first, that the ALJ applied an erroneous and unduly demanding standard when analyzing his symptom testimony. (Pl. Br. at 26-28.) Second, Plaintiff asserts that "the ALJ's alleged inconsistencies are artificial" and explains why his testimony is not internally inconsistent. (*Id.* at 27-30.)

The Commissioner responds, first, that the ALJ properly noted that three consultative examiners opined Plaintiff could perform simple work and ruled that the objective medical evidence did not corroborate Plaintiff's claims. (Def. Br. at 21.) Second, the Commissioner argues that the ALJ identified several episodes of inconsistency and properly discounted Plaintiff's symptom testimony on that basis. (*Id.* at 22-23.)

Plaintiff replies that the Commissioner fails to respond to his arguments. (Reply at

13-14.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015.

Applying these standards, the Court finds no error. The ALJ explicitly connected Plaintiff's testimony to evidence that could be rationally construed as contradicting that testimony. (R. 30-34.) For example, Plaintiff testified that his seizures prevent him from driving and his driver's license had been "taken" by the State of California because the Marine Corps "sent out a statewide thing to . . . anyplace I ever had a driver's license and they all sent me something back saying I can't drive." (*Id.* at 56-57.) Elsewhere, he clarified: "I don't have a license." (*Id.* at 54.)[3] Plaintiff asserted his license was revoked "a long time ago." (*Id.* at 57.) Plaintiff also told Dr. Montijo-Tai that he did not have a valid driver's license and "made it very clear" that he took a cab service to the appointment. (*Id.* at 2331.) The ALJ noted, however, that Plaintiff "presented an Arizona Driver License as personal proof" to Dr. Geary in December 2019. (*Id.* at 33.) Plaintiff's assertion that "Dr. Geary's report could have misidentified a license instead of a state identification card" (Pl. Br. at 29) is purely speculative.

The ALJ identified other examples of inconsistency. For example, Plaintiff claimed to have "no friends" because he "can't trust people" (R. 72) but also claimed to have met

---

[3] Plaintiff asserts that he "testified his *California* driver's license was taken away" (Pl. Br. at 29), but the ALJ could have rationally interpreted his testimony to mean that he did not have any driver's license.

- 12 -

his fiancée within "[t]he last three years" through "mutual friends." (*Id.* at 52.) The record also reflects that Plaintiff was actively abusing cannabis in 2018 (*id.* at 2160), and in 2019 asserted that he had used cannabis "four months ago." (*Id.* at 2576). During his testimony, however, Plaintiff stated that those records of drug use were simply "wrong." (*Id.* at 59.)

Such inconsistency is a valid reason for an ALJ to discount symptom testimony, *Smolen*, 80 F.3d at 1284, and the statements cited by the ALJ are substantial evidence to support his reasoning. Although Plaintiff identifies various reasons why a different factfinder might have been able to reconcile this evidence with his symptom testimony, the ALJ's finding of inconsistency was rational and, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

Given these conclusions, it is unnecessary to resolve whether the ALJ's additional proffered reasons for discounting Plaintiff's symptom testimony were specific, clear and convincing, and supported by substantial evidence. Even if not, substantial evidence supports the ALJ's ultimate conclusion. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, such is deemed harmless and does not warrant reversal.") (alterations in original) (internal quotation marks omitted); *see also Magnotti v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4025959, *4 (D. Ariz. 2021) (same).

    C.    Decisions By Other Governmental Agencies

        1.    **2017 Regulations**

As noted, the SSA amended its regulations in early 2017, and those new regulations apply to Plaintiff's claim.[4] Under the old regulations, the law in the Ninth Circuit was that an ALJ must consider a VA rating determination and provide "persuasive, specific, valid

---

[4] Plaintiff disputes that the Ninth Circuit's approach to the evaluation of treating physicians has changed after the 2017 regulations (Pl. Br. at 17-19) but seems to accept that the Ninth Circuit's older case law no longer applies as to VA rating determinations. Thus, the Court will not analyze whether an ALJ in the Ninth Circuit is still required to provide "persuasive, specific, valid reasons" for rejecting a VA rating.

reasons" for rejecting it, given the "marked similarity" between the two disability programs. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

Under the new regulations, "a decision by any other governmental agency . . . about whether you are disabled . . . is not binding on [the SSA] and is not our decision about whether you are disabled . . . . Therefore, . . . we will not provide any analysis in our determination or decision about a decision made by any other governmental agency . . . about whether you are disabled . . . . However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)." 20 C.F.R. §404.1504. The SSA also clarified the distinction between an agency decision and supporting evidence in its final rules commentary: "Although we are not requiring adjudicators to provide written analysis about how they consider the decisions from other governmental agencies and nongovernmental entities, we do agree with the commenters that underlying evidence that other governmental agencies and nongovernmental entities use to support their decisions may be probative of whether an individual is disabled or blind under the Act." Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5848 (Jan. 18, 2017).

It is clear to the Court that, under the new regulations, although an ALJ need not explain why she dismissed a disability determination by the VA, she must still "consider all the evidence underlying the VA's decision—at least, all the evidence that was presented to the VA and is also presented to the Social Security Administration, and . . . provide analysis of any significant, probative evidence contained in the VA records." *Gerald B. v. Comm'r of Soc. Sec. Admin.*, 2021 WL 568030, *3 (W.D. Wash. 2021). *See also Michelle H. v. Kijakazi*, 2021 WL 4342313, *9-10 (D. Idaho 2021) (finding that the ALJ did not err by failing to analyze a disability finding made under another agency's standard but did err by failing to address that doctor's findings when relevant to RFC assessment).

…

…

2. **The ALJ Erred By Failing To Consider Supporting Evidence Underlying The VA's Decision**

In January 2018, Plaintiff underwent a VA disability rating review by Dr. Greenberg. Dr. Greenberg performed a mental status exam and made a DSM-5 diagnosis, leading to a rating of 70% service-connected disability for posttraumatic disorder. (R. 1500-1503.)

The ALJ mentioned that Dr. Greenberg had evaluated Plaintiff and diagnosed him with PTSD and severe impairments. (*Id.* at 27.) The ALJ also set forth Dr. Greenberg's findings at length. (*Id.* at 31.) The ALJ then summarily dismissed Dr. Greenberg's report by citing 20 C.F.R. §404.1504. (*Id.* at 31-32.)

Plaintiff argues the ALJ erred because she "did nothing to address the specifics of Dr. Greenberg's report." (Pl. Br. at 31.)

The Commissioner responds that decisions by other governmental agencies (including the VA) are not considered inherently valuable or persuasive under the 2017 regulations and that the ALJ was not required to analyze the VA's determination. (Def. Br. at 20.)

Plaintiff replies that "the problem is not the service-connected rating of disability itself, but the failure to consider the underlying findings of the VA decision." (Reply at 14.)

The Court agrees with Plaintiff that the ALJ erred. Although the ALJ was not obligated to explain why she was rejecting Dr. Greenberg's disability rating, she was obligated to explain her interpretation of the findings underlying that decision. If the ALJ did more than summarize Dr. Greenberg's findings, the Court does not see it and the Commissioner does not identify it.

…

…

…

…

      **D.**    <u>The Appropriate Remedy Is To Remand Plaintiff's Case For Further Proceedings</u>

The credit-as-true rule determines whether a case should be remanded for benefits. The rule, if applied here, would result in remand of Plaintiff's case for a calculation and payment of benefits. *Garrison*, 759 F.3d at 1020. It applies if each part of a three-part test is satisfied. *Id.* First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id.* Next, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions. *Id.* Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id.* Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

The Court finds that further administrative proceedings will serve a useful purpose. The ALJ exhaustively detailed the medical evidence of record but failed to clearly link her ultimate conclusions to the record in the format required by current regulations. Additionally, the Court's independent review of the record both prompts serious doubt as to whether Plaintiff is, in fact, disabled, and inspires confidence that the ALJ developed, but simply failed to enunciate, a satisfactory level of evidentiary support for her decision.

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with the Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 17th day of March, 2022.

Dominic W. Lanza
United States District Judge